IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WAYNE P. RUBENSTEIN, et al.        :        CIVIL ACTION
                                   :
        v.                         :
                                   :
DOVENMUEHLE MORTGAGE, INC.,        :
et al.                             :        NO. 09-721

MEMORANDUM

Dalzell, J.                                 October 28, 2009

        Plaintiffs Wayne and Vicki Rubenstein assert various

claims, largely based on an alleged breach of contract, against

defendants Matrix Financial Services Corporation ("Matrix") and

Dovenmuehle Mortgage Company, Inc. ("Dovenmuehle"), owner and

servicer, and subservicer of a mortgage the Rubensteins obtained

over twenty years ago to finance a property in Margate, New

Jersey.  Defendants move to dismiss the amended complaint

pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth

below, we will grant defendants' motion in part and deny it in

part.


I.    **Factual Background**

        Plaintiffs obtained the mortgage financing in question

on July 5, 1988 to purchase a property in Margate, New Jersey.

Greentree Mortgage Corporation ("Greentree") was mortgagee on

this $144,000.00 obligation.  Am. Compl. ¶ 9.  The mortgage

itself was recorded in the office for the recording of deeds for

Atlantic County, New Jersey.  Am. Compl. ¶ 10.  Between September
of 1988 and March of 2003, the mortgage passed through a series
of owners by assignment while Greentree retained the servicing
function.  Am. Compl. ¶ 11-19.

From 1989 until 1992, the interest rate on the
mortgage was reset and adjusted several times.  Am. Compl. ¶ 14.
In July of 1993, the Rubensteins converted the mortgage to a
fixed rate of interest and paid Greentree the $250.00 conversion
fee.  Am. Compl. ¶ 15.  After the conversion, the interest rate
was fixed at 6.375%.  Am. Compl. ¶ 16.  Plaintiffs contend that
during the course of the repayment they would from time to time
make principal payments in excess of the minimum payments or make
payments prior to their due dates.  Am. Compl. ¶ 17.  As a
result, plaintiffs believe that, although they were unaware of it
at the time, they had paid off all of the principal and interest
due on the loan by November of 2003.  Am. Compl. ¶ 18.

Greentree, which is not a party to this action, and
which later became Scopia Mortgage Corporation, never informed
the Rubensteins that they had satisfied their loan and continued
to collect payments of principal, interest and escrow as if the
loan had not been paid in full.  Am. Compl. ¶ 19-20.  On March 3,
2004, Scopia Mortgage Corporation assigned the mortgage to the

2

Federal Deposit Insurance Corporation, as receiver for Security
Federal Savings Bank, even though Greentree's ownership interest
was never recorded.  Am. Compl. ¶ 20-21.  On March 9, 2004, the
Federal Deposit Insurance Corporation in turn assigned the
mortgage to Mortgage Electronic Registration Systems, Inc.  Am.
Compl. ¶ 22.

In early 2004, plaintiffs began to suspect that they
had been overpaying the loan.  Am. Compl. ¶ 24.  They asked the
"then servicer" and the "then holder" of the loan for a correct
statement of the balance due, but were told that the balance
shown was correct.  Am. Compl. ¶ 24.

Later in March, Matrix became the owner of the mortgage
and began servicing it as if it were a floating rate loan as of
June 1, 2004.  Am. Compl. ¶ 25.  Toward the end of October of
that year, Matrix proposed that the Rubensteins sign a loan
modification agreement, backdated to June 1, 2004, that would
make the loan a fixed-rate loan and acknowledge that the
remaining principal balance of the mortgage was $102,310.30.
Plaintiffs refused.  Am. Compl. ¶ 27.

During September and October of 2004, the Rubensteins
continued to ask representatives of Matrix about the balance of
the mortgage and Matrix repeatedly told them that the balance

3

stated was correct.  Am. Compl. ¶ 24.  At some point --
plaintiffs do not say exactly when -- Matrix informed them that
it believed the loan was in default due to a claimed escrow
shortage and Matrix reported that alleged default to at least one
credit reporting agency.  Am. Compl. ¶ 26.

On November 1, 2004, defendant Dovenmuehle became the
"servicer or subservicer" of the mortgage, and was thus
responsible for collecting payments on behalf of Matrix while
Matrix retained ownership of the mortgage.  Am. Compl. ¶ 28.
Throughout the fall of 2004, the Rubensteins made many telephone
calls to representatives of Matrix in an attempt to ascertain the
balance, but were always told that the balance was correct, even
though, as plaintiffs later discovered, Matrix did not have the
payment history prior to mid-2004.  Am. Compl. ¶ 30.

In December of 2004, Dovenmuehle proposed that the
Rubensteins enter into a loan modification agreement.  Plaintiffs
do not say whether they signed that agreement.  Am. Compl. ¶ 31.
The Rubensteins ultimately refinanced their mortgage on February
22, 2008, paying Dovenmuehle $84,341.40 "under protest" to pay
off the mortgage.  Am. Compl. ¶ 34.  After the refinancing,
Matrix recorded a Satisfaction of Mortgage in Atlantic County.
Am. Compl. ¶ 35.

The Rubensteins filed this lawsuit on February 19, 2009 alleging (a) violation of the Fair Debt Collection Practices Act ("FDCPA")(Count I), (b) violation of the Real Estate Settlement Procedure Act ("RESPA")(Count II), (c) unjust enrichment (Count III), (d) violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA")(Count IV), (e) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")(Count V), (f) breach of contract (Count VI),[1] and (g) breach of the covenant of good faith and fair dealing (Count VII).

## II.  **Analysis**

The defendants move to dismiss all of plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).  Plaintiffs incorrectly cite <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), as the proper standard of review for a motion to dismiss.  Pl. Opp., at 1.  Defendants correctly note that <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 562 (2007), has laid to rest <u>Conley</u>'s "no set of facts" language.  Def. Rep., at 2.

---

[1] Plaintiffs call this claim "Count V" as well, but we will call it "Count VI" for clarity.  Plaintiffs also entitle their claim for breach of the covenant of good faith and fair dealing as "Count VI," but we will refer to it here as "Count VII."

Now, a party's factual allegations must raise a right
to relief above the speculative level, and a complaint must
allege facts suggestive of illegal conduct. Twombly, 550 U.S. at
563; Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir.
2008) (citing Twombly). The Supreme Court recently clarified the
Twombly standard in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009),
where it held that a complaint must contain sufficient factual
matter to state a claim for relief that is "plausible on its
face." Iqbal, 129 S.Ct. at 1949 (internal quotations omitted). A
claim has facial plausibility when the plaintiff pleads facts
sufficient to allow the court to "draw the reasonable inference
that the defendant is liable for the misconduct alleged." Id.
The plausibility standard is not as demanding as a "probability
requirement," but it does oblige plaintiffs to allege facts
sufficient to show that there is more than the mere possibility
that a defendant has acted unlawfully. Id. (internal quotations
omitted).

The Supreme Court enumerated in Iqbal two principles
that now underlie a motion to dismiss inquiry.  First, although a
court must accept as true the factual allegations in a complaint,
this does not extend to legal conclusions.  Id.  "Threadbare
recitals of the elements of a cause of action, supported by mere

6

conclusory statements, do not suffice."[2]  Id. Second, a complaint

must state a plausible claim for relief to survive a motion to

dismiss.  Id. at 1950.  Determining whether a complaint states a

plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience

and common sense."  Id.  If the well-pleaded facts allege, but do

not "show," more than the mere possibility of misconduct, then

the pleader is not entitled to relief within the meaning of Rule

8(a)(2).  Id.

        In deciding a motion to dismiss, "courts generally

consider only the allegations in the complaint, exhibits attached

to the complaint, matters of public record, and documents that

form the basis of a claim.  A document forms the basis of a claim

if the document is 'integral to or explicitly relied upon in the

complaint.'"  Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d

Cir. 2004) (internal citations omitted).

        Before we consider plaintiffs' claims, we will first

dispense with defendants' holder in due course defense.

Defendants argue that Matrix is a holder in due course and, as

such, all but one of plaintiffs' claims must fail.

_____

        [2]Most of plaintiffs' claims do not even provide threadbare
recitals of the elements.

7

"Holder in due course" means the holder of an instrument if:

> . . . (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) the holder took the instrument: (i) for value;(ii) in good faith; (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (iv) without notice that the instrument contains an unauthorized signature or has been altered; (v) without notice of any claim to the instrument described in section 3306 (relating to claims to an instrument); and (vi) without notice that any party has a defense or claim in recoupment described in section 3305(a) (relating to defenses and claims in recoupment).

13 Pa. C.S.A. § 3302(a).  This affirmative defense is not categorically inappropriate at the motion to dismiss stage (as plaintiffs argue), but because defendants have presented us with a motion to dismiss, we must take plaintiffs' alleged facts as true and may not consider facts outside of the amended complaint. Because plaintiffs have not averred sufficient facts to show that Matrix is a holder in due course, we cannot consider the holder in due course defense at this juncture.

We now turn to plaintiffs' claims.

A.    **FDCPA**

The Rubensteins claim that defendants violated the FDCPA by collecting payments from them that the mortgage did not expressly authorize.  They contend this is so because, by the time defendants owned and were servicing the mortgage, the mortgage had already been paid in full to a previous holder. Plaintiffs also argue that defendants violated the Act by making false statements "from time to time."  Am. Comp. ¶ 42-43.  The FDCPA applies to "debt collectors" who are attempting to collect debts, but the term "debt collector" does not encompass those who are collecting a debt "which was not in default at the time it was obtained by such person."  15 U.S.C.A. § 1692a(6)(F)(iii).

Examining the facts alleged in the amended complaint, we find that plaintiffs -- far from alleging that the mortgage was ever in default -- allege instead that "the obligation had already been paid in full" by the time defendants acquired it. Am. Compl. ¶ 41.  Plaintiffs cannot have it both ways.  They have argued that the mortgage was paid in full before defendants ever owned and serviced it, and therefore they cannot -- and, in fact, do not -- contend that the mortgage was in default.

The Rubensteins argue that defendants violated the FDCPA because they <u>believed</u> that plaintiffs' mortgage was in

9

default.  Am. Compl. ¶ 26.  But the definition of "debt
collector" does not turn on what plaintiffs think the defendants
believed.[3]  Because plaintiffs do not allege that the mortgage
was in default when either of the defendants acquired it, they
have not alleged sufficient facts to state a claim against either
Matrix or Dovenmuehle under the FDCPA.  Dawson v. Dovenmuehle
Mortgage, Inc., No. 00-6171, 2002 WL 501499, at *5 (E.D. Pa.
April 3, 2002) (because plaintiff did not allege that the loan
was in default before the assignment was made, and because "the
statute applies to a mortgage servicing company only where the
mortgage at issue was already in default at the time when
servicing began," the statute did not apply to defendant mortgage
servicing company).

        Plaintiffs' FDCPA claim against Matrix can also be
dismissed for a second, independent reason.  The FDCPA does not
apply to those who collect debts for themselves.  One collecting

---

        [3] Plaintiffs cite one case, Schlosser v. Fairbanks Capital
Corp., 323 F.3d 534 (7th Cir. 2003), in support of their
argument.  In Schlosser, Fairbanks believed the loan was in
default when it acquired it, and the Seventh Circuit ruled that
it was subject to the FDCPA when it did not appropriately notify
the plaintiffs of their right to contest the debt.  We find this
case inapposite because plaintiffs also do not aver that
defendants believed that the loan was in default when they
acquired it.

a debt is not considered a "debt collector" under §
1692a(6)(F)(ii) if the collection "concerns a debt which was
originated by such person," <u>i.e.</u>, if one collects one's own debt
and not another's.  When Matrix began servicing the loan, it also
became the owner of the loan.  Am. Compl. ¶ 25.  Not only was the
loan not in default at the time that Matrix acquired it, but any
debt owed Matrix once it acquired the mortgage originated with
Matrix.  Because Matrix was attempting to collect a debt owed to
itself and not to another, the FDCPA does not apply to Matrix for
this reason as well.

        The amended complaint does not aver sufficiently well-
pleaded facts to show that the FDCPA applies either to Matrix or
Dovenmuehle.  Plaintiffs' claims against Matrix and Dovenmuehle
based on the FDCPA must therefore be dismissed.


        **B.    <u>FCEUA</u>**

        The FCEUA is Pennsylvania's analogue to the FDCPA.  But
the definition of "debt" in the FCEUA does not include "money
which is owed or alleged to be owed as a result of a loan secured
by a purchase money mortgage on real estate."  73 P.S. § 2270.3.
Plaintiffs refer to the mortgage in their amended complaint but
failed to attach it.  Defendants, however, have attached it to

                                    11

their reply brief.  Def. Rep. Ex. 1.  Because the mortgage's authenticity is uncontested and it is integral to plaintiffs' claims, we may consider it for the purposes of this motion.

Defendants are correct that the first page of the Mortgage Agreement contains the statement, "This is a purchase money mortgage intended to be a first lien on the within described premises."  Id.  Plaintiffs concede that the mortgage is a purchase money mortgage under the Act.  Pl. Sur-Rep., at 12. We are satisfied that the debt owed in this case is pursuant to a purchase money mortgage and thus falls under an exemption to the FCEUA, and so the FCEUA does not apply here.  Pearson v. LaSalle Bank, No. 08-2306, 2009 WL 1636037, at *4 (E.D. Pa. June 9, 2009) (because the debt in question was a purchase money mortgage, it was not a "debt" under the FCEUA, and the claim was dismissed).

Plaintiffs' FCEUA claim against defendants will be dismissed as unopposed.

### C.   **UTPCPL**

The Rubensteins assert a claim under the UTPCPL for "fraudulent or deceptive conduct," but do not cite a specific provision under the law.  Am. Comp. ¶ 75.  To bring a claim of fraud under the UTPCPL, our Court of Appeals has interpreted

Pennsylvania state court precedent to require the elements of common law fraud.  <u>Tran v. Metropolitan Life Ins. Co.</u>, 408 F.3d 130, 140-41 (3d Cir. 2005).  As a result, the claim must also satisfy the heightened particularity requirement of Rule 9(b), which requires that a plaintiff allege the date, time and place of the alleged fraud "or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007).

     To establish a claim of common law fraud under Pennsylvania law, a plaintiff must include clear and convincing evidence of (1) a misrepresentation, (2) material to the transaction, (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable reliance resulted, and (6) injury was proximately caused by the reliance.  <u>Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.</u>, 401 F.3d 123, 136 (3d Cir. 2005).

     Plaintiffs aver twice that defendant made "false representations from time to time," but this is not sufficiently particular to meet the requirements of Rule 9(b).  Am. Compl. ¶ 42-43.  Plaintiffs also allege that "[i]n December, 2004, defendant Dovenmuehle again proposed to plaintiffs that they enter into a loan modification agreement which would acknowledge

that the remaining principal balance of the loan as of June 1, 2004, was $102,310.30, notwithstanding that by then, according to Dovenmuehle's own records, the balance of the Loan had been reduced to $99,743.11." Am. Compl. ¶ 31. This statement is too ambiguous to allege the requisite scienter. "By then" does not sufficiently pin-point the falseness of the statement. In addition, plaintiffs do not allege that they signed that proposed loan agreement or relied on it. The Rubensteins claim that they suspected that past servicers had overcharged them and that they ultimately paid off the mortgage "under protest," but this allegation does not begin to satisfy Rule 9(b)'s particularity demands. Am. Compl. ¶ 34. Thus, plaintiffs do not allege sufficient facts to support a claim of common law fraud.

The standard for alleging deceptive practices under the UTPCPL is less strict than that for alleging fraud in that it does not require allegations of scienter, and need not meet the requirements of Rule 9(b). To bring a viable claim of deceptive practices, however, plaintiffs must allege facts showing a "deceptive act," that is, "intentionally giving a false impression," of "conduct that is likely to deceive a consumer acting reasonably under similar circumstances." Seldon v. Home Loan Services, Inc., No. 07-4480, 2009 WL 2394182, at *16 (E.D.

Pa. Aug. 4, 2009)(Yohn, J.) (internal quotations omitted) (citing Black's Law Dictionary 455 (8th ed. 2004)).  Plaintiffs must also allege facts to show justifiable reliance and that the justifiable reliance caused ascertainable loss in order to maintain a claim of deceptive conduct under the UTPCPL.  Id. Here, plaintiffs do not allege any specific deceptive acts on defendants' part.  The Rubensteins contend that defendants failed immediately to disclose that they did not have plaintiffs' complete payment history pre-dating Matrix's acquisition of the loan, but they have not adequately alleged facts to show that they suffered ascertainable loss by such deceptive conduct. Thus, we find that plaintiffs have not alleged sufficient facts to sustain a claim of either fraud or deceptive conduct under any of the UTPCPL's provisions.

The Rubensteins' UTPCPL claim must be dismissed.

**D.   RESPA**

Plaintiffs claim that defendants violated RESPA in three ways: (1) failing to respond adequately to their qualified written request, (2) conducting an inadequate investigation, and (3) failing to maintain accurate records.  Am. Compl. ¶ 59, 61-62.  Under the statute, once a qualified written request has been

submitted, the servicer must "provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period."  12 U.S.C.A. § 2605(e)(1)(A).  In addition, the statute requires that,

> Not later than 60 days (excluding legal public holidays, Saturdays, and Sunday) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall...(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C.A. § 2605(e)(2)(C).

First, we consider the January 23, 2008 letter from Dovenmuehle to plaintiffs, which was referred to in plaintiffs' amended complaint at paragraph 55, and which is attached in plaintiffs' response as Exhibit L.  Most importantly, it "form[s] the basis of a claim." Lum, 361 F.3d at 222 n.3.  This letter responds to the Rubensteins' first qualified written request which they sent to Dovenmuehle four days earlier. Am. Compl. ¶53.

16

In examining Dovenmuehle's response to plaintiffs' inquiry, we find that Dovenmuehle responded within twenty days of plaintiffs' qualified written request and acknowledged receipt of that request in compliance with 12 U.S.C. § 2605(e)(1)(A).[4]

Second, plaintiffs do not allege any facts that show that defendants' investigation was inadequate under 12 U.S.C. § 2605(e)(2)(C). RESPA requires that a servicer substantively respond to a qualified written request within sixty days. Plaintiffs do not aver that they received defendants' response after the sixty days had elapsed. They allege that the response was deficient, but only allege facts that do not on their face show a RESPA violation.

Plaintiffs contend that "defendant Dovenmuehle violated RESPA by incorrectly stating that it could not respond to plaintiffs' inquiries because it was unable to obtain payment histories and thus could not provide an accounting without records prior to the date it began servicing the Loan." Am. Compl. ¶ 61. This allegation alone is insufficient to show a RESPA violation regarding the adequacy of the investigation.

---

[4] Plaintiffs allege new facts in their response, but we cannot consider allegations made outside the amended complaint's corners.

17

Section 2605(e)(2)(C) holds that a servicer must, "after conducting an investigation, provide the borrower with a written explanation or clarification that includes–(i)information requested by the borrower <u>or an explanation of why the information requested is unavailable or cannot be obtained by the servicer</u>" (emphasis added).  If anything, plaintiffs allege facts sufficient to show that defendants satisfied the statute.  And although defendant Dovenmuehle may have written in its response to plaintiffs that "it could not respond" to their request, the very fact that they wrote this in (1) a written response that included (2) an explanation of why the information requested was unavailable (or could not be obtained) suggests that Dovenmuehle <u>did</u> respond, and adequately at that.  <u>Pettie v. Saxon Mortgage Services</u>, No. C08-5089RBL, 2009 WL 1325947, at *3 (W.D. Wash. May 12, 2009)(holding that defendant explained why it could not provide the requested information and thus was in compliance with RESPA, never triggering the damages clause).

        Finally, the Rubensteins claim that defendants violated RESPA by failing to maintain accurate records of the tax and insurance escrow accounts.  Am. Comp. ¶ 62.  Nowhere in the statute is there language about maintaining accurate records of tax and insurance escrow accounts.  Indeed, plaintiffs cite none.

But even if plaintiffs could show that defendants did not respond within the required sixty days (therefore violating RESPA), their claim would still fail for the independent reason that plaintiffs did not suffer any economic damage due to the alleged RESPA violations.  Plaintiffs refinanced their loan, closing on the new loan on February 22, 2008, and paid defendants $84,341.40 to obtain a satisfaction of record of the mortgage. Am. Compl. ¶ 58.  They did this within the sixty day period and before defendants responded to their request.

Although the Rubensteins are quite right that they were not required under RESPA to wait sixty days to refinance their mortgage, they did have to wait up to sixty days to determine whether defendants had violated the statute and whether they would be damaged by that violation.  In this respect, their heavy reliance on a Middle District of Alabama case is puzzling when we have so many instructive REPSA opinions available from this District.[5]  In any event, <u>Rawlings v. Dovenmuehle Mortgage, Inc.</u>, 64 F.Supp.2d 1156 (M.D. Ala. 1999), is inapposite.  In <u>Rawlings</u>, the court ruled on a motion for summary judgment where the defendants admitted to obtaining the information necessary to

---

[5] Perhaps plaintiffs long for some other sweet home, <u>e.g.</u>, <u>Sweet Home Alabama</u>, (D&D Films 2002).

correct plaintiffs' records after the sixty days had elapsed, and plaintiffs were cognizably injured by the REPSA violation.  Here, because plaintiffs paid off their loan in full before defendants had the opportunity either to respond to the qualified written request or, alternatively, to violate the Act, they foreclosed the possibility of being damaged by defendants' anticipated future RESPA violations.

But the Middle District of Alabama and the Eastern District of Pennsylvania appear to agree on this point: under RESPA, defendants must have violated the Act, and plaintiffs must have detrimentally relied on that violation, for plaintiffs to allege sufficient facts upon which relief can be granted.  <u>Jones v. Select Portfolio Servicing, Inc.</u>, No. 08-972, 2008 WL 1820935, at *9 (E.D. Pa. Apr. 22, 2008)(dismissing RESPA claim for failure to plead causation and actual damages properly); <u>Alston v. Countrywide Financial Corp.</u>, No. 07-3508, 2008 WL 4444243, at *5 (E.D. Pa. Sept. 29, 2008)(finding plaintiffs could not bring a RESPA claim without alleging damages based on a RESPA violation); <u>Contawe v. Crescent Heights of America, Inc.</u>, No. 04-2304, 2004 WL 2244538, at *3 (E.D. Pa. Oct. 1, 2004)(holding that a private party wishing to bring suit under RESPA must first suffer actual injury in the form of inflated settlement charges).  That

plaintiffs were in a rush to refinance does not speed up RESPA's requirements.

Plaintiffs' RESPA claim must be dismissed.

### E.   **Breach of Contract**

We now turn to plaintiffs' claim for breach of contract.  As a preliminary matter, the parties agree that New Jersey law governs the mortgage.  Pl. Sur-Rep., at 6; Def. Rep., at 3.  Defendants agree that they are bound by the terms of the mortgage.  Def. Rep., at 4.

To assert a breach of contract claim under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  <u>Frederico</u>, 507 F.3d at 203.

The amended complaint satisfies the first and fourth elements of a breach of contract claim, and defendants do not dispute this.  With regard to the second and third elements, the Rubensteins generally aver in the amended complaint that "[d]efendants breached the duties and obligations owed to plaintiffs under the terms of the Loan," Am. Compl., ¶ 80, but do not cite a specific provision or term of the contract that has

allegedly been violated.  But in their response, plaintiffs at last cite two allegedly violated provisions of the contract, paragraphs 11 and 21.  Pl. Opp., at 10.  Paragraph 11 simply provides that the contract binds the lenders and the borrower. Defendants have agreed that they are bound by the contract, but maintain that they have not breached it.  Paragraph 21 provides that, upon payment of all sums secured by the mortgage, the lender shall cancel the security instrument without charge to borrower. Def. Rep. Ex. 1.  The Rubensteins aver that they began to suspect that they had been overpaying the loan in early 2004, and that they notified the servicer who repudiated this claim by telling them that they had not overpaid, and who refused to record a satisfaction of the mortgage.  Am. Compl. ¶ 24. Plaintiffs also contend that by the time they ultimately satisfied the loan, they had paid at least $84,341.40 above the full cost of the loan.  Am. Compl. ¶ 34. Thus, the Rubensteins have pleaded sufficient facts to state a plausible claim for relief based on breach of contract.

In addition, we find that the statute of limitations for plaintiffs' breach of contract claim has not run.  Under New Jersey law, a claim for breach of contract has a six-year statute of limitations.  N.J. Stat. Ann. § 2A:14-1.  In determining the

accrual date of a claim under a contract that is paid out in

installments, a new claim arises for each missed payment or

underpayment or other failure to comply with the contract terms.

Beeson, Inc. v. Coca Cola Co., et al., No. 08-4150, 2009 WL

2008424, at *2 (3d Cir. July 13, 2009) (citing Matter of

Liquidation of Integrity Ins. Co., 685 A.2d 1286, 1298 (N.J.

1996)) (holding that a new claim arises for each missed payment

under an installment contract).  An act of repudiation, however,

triggers a plaintiff's capacity to sue for a breach.  Id.

Repudiation entails a statement that shows that the promisor will

likely[6] commit a breach when performance becomes due.  Id.  When

the previous servicer told the Rubensteins, in response to their

inquiry, that it did not believe that the loan was satisfied,

this was an act that put them on notice of a potential breach of

contract. Am. Compl. ¶ 24.  Because the statute of limitations on

_____

[6]As the Appellate Division of the New Jersey Superior Court
recently noted, though the traditional view of anticipatory
breach required unequivocal repudiation, "the modern view does
not limit anticipatory repudiation to cases of express and
unequivocal repudiation of a contract.  Instead, anticipatory
repudiation includes cases in which reasonable grounds support
the obligee's belief that the obligor will breach the contract."
Park Center at Route 35, Inc. v. Zoning board of Adjustment of
the Township of Woodbridge, 2009 WL 2341533 at *4 (N.J. Super.
A.D., July 31, 2009) (internal quotations and citations of New
Jersey authority omitted).

a breach of contract claim is six years, and plaintiffs became aware of a possible breach in early 2004, the statute of limitations has not yet run.

**F.    Breach of Covenant of Good Faith and Fair Dealing**

Every contract in New Jersey contains an implied covenant of good faith and fair dealing. Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 270 (3d Cir. 2004). Under New Jersey law, the implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of the contract's express terms. Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000).

To state a claim for breach of the implied covenant of good faith and fair dealing, plaintiffs must allege that defendants acted in bad faith or engaged in "some other form of inequitable conduct in the performance of a contractual obligation." Black Horse, 228 F.3d at 288.  Bad faith may include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance." Id. at 289 (emphasis in original).  The breaching party's bad faith or

24

inequitable conduct must cause the destruction or injury of the claimant's right to receive the fruits of the contract.  Id. at 288.

Plaintiffs fail to allege facts sufficient to show that defendants acted in bad faith or with "ill motives."  U.S. Land Resources, LP v. JDI Realty LLC, No. 08-5162, slip op. at 13 (D.N.J. Aug. 12, 2009).  Because plaintiffs have failed to show that defendants were required by law to obtain their full payment history from previous servicers, or that they were required by law to respond to plaintiffs' inquiries differently than they did, the Rubensteins cannot show that defendants breached the implied covenant of good faith and fair dealing.  As plaintiffs do not state a plausible claim upon which relief can be granted with regard to the covenant of good faith and fair dealing, we shall dismiss this claim.

**G.**   **Unjust Enrichment**

A District Court in a diversity case must of course apply the law of the forum state, including its choice of law provisions.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Homa v. American Express Co., 558 F.3d 225, 227 (3d Cir. 2009).  Under Pennsylvania's choice of law rules, a

court does not consider a claim for unjust enrichment to be an action in tort or contract, but rather to be a form of restitution.  <u>Powers v. Lycoming Engines</u>, 328 F.App'x 121, 126 (3d Cir. 2009).  Summarizing this jurisprudence, our colleague recently noted that "[t]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states.  If no conflict exists, further analysis is unnecessary."  <u>Wayne Moving & Storage of N.J. v. School Dist. of Philadelphia</u>, No. 06-0676, 2008 WL 65611, at *5 n.4 (E.D. Pa. Jan. 3, 2008)(Stengel, J.) (internal quotations omitted).

        Under Pennsylvania law, we find that to state a claim based on unjust enrichment plaintiffs must allege that: (1) plaintiff conferred a benefit on defendant, (2) defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for defendant to accept and retain the benefit without payment of value.  <u>Mountbatten Surety Co., Inc. v. AFNY, Inc.</u>, No. 99-2687, 2000 WL 375259 *25 (E.D. Pa. Apr. 11, 2000) (Dalzell, J.).  The same holds true under New Jersey law.  <u>Kim v. Baik</u>, No. 06-3604, 2007 WL 674715, at *2 and *4 (D.N.J. Feb. 27, 2007).  Similarly, the laws of both states provide that a plaintiff cannot make a claim for unjust enrichment when the

parties' relationship is governed by an unrescinded written contract. <u>Wilson Area School Dist. v. Skepton</u>, 895 A.2d 1250, 1254 (Pa. 2006)("it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings" (internal quotations omitted)); <u>Van Orman v. American Ins. Co.</u>, 680 F.2d 301, 311 (3d Cir. 1982)("New Jersey courts regard the existence of a valid contract as a bar to recovery under [unjust enrichment]"). Thus, because we find the laws of New Jersey and Pennsylvania the same with regard to unjust enrichment, we will apply the law of our forum state.

Defendants correctly contend that a mortgage note is a written instrument that precludes a claim for unjust enrichment. Mot. to Dismiss, at 9; <u>First Wisconsin Trust Co. v. Strausser</u>, 653 A.2d 688, 693 n.2 (Pa. Super. 1995)(holding that the existence of a written note or mortgage agreement precludes a claim of unjust enrichment). In addition, the parties agree that the mortgage governs their relationship. Therefore, plaintiffs may not plead a claim for unjust enrichment because there is a valid written agreement that governs their relationship with the

27

defendants.  Plaintiffs' claim for unjust enrichment must be dismissed.

### H.  <u>Plaintiffs' Request for Leave to Amend</u>

Plaintiffs request leave to amend their amended complaint.  Leave to amend a pleading "shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a). "Liberality is the keystone of Rule 15(a)." <u>Prof'l Cleaning and Innovative Bldg. Services, Inc. v. Kennedy Funding, Inc.</u>, 245 F.App'x 161, 165 (3d Cir. 2007).  But a Court should not grant leave to file an amended complaint if the amendment will be "based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." <u>USX Corp v. Barnhart</u>, 395 F.3d 161, 166 (3d Cir. 2004) (internal quotations omitted).

An amendment would be futile "when the complaint, as amended, would fail to state a claim upon which relief could be granted." <u>In re NAHC, Inc. Sec. Litig.</u>, 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting <u>In re Burlington Coat Factory</u>, 114 F.3d 1410, 1434 (3d Cir. 1997)).  We find that plaintiffs' claims under the FCEUA and for unjust enrichment will be futile, and therefore we will not grant leave to amend those claims.  With regard to the

28

remaining claims dismissed above, however, in the interest of justice we will grant plaintiffs' request for leave to file a motion to amend their amended complaint.


BY THE COURT:

__\s\Stewart Dalzell